Good morning, Your Honors. May it please the Court, Counsel. My name is Renee Maness. I'm here representing Mr. Wells, and I would like to reserve a minute and a half for rebuttal. Your Honors, one thing I believe is basically indisputable is that if Counsel O'Dell had done his job that he was appointed to do by the State of Oregon and represent Mr. Wells on direct appeal appropriately within the standard of professional care, we would not be here today. Now, this fellow Wells had a lot of lawyers, now which one is this? O'Dell is The appointed lawyer on appeal? Yes, the appointed lawyer on appeal who was subsequently disbarred for abandoning Mr. Wells and several other clients, as well as absconding with Mr. Wells' transcript and trial files, making it very difficult for him to enter into post-conviction and to raise all appropriate claims. What's interesting is if Mr. O'Dell, if Counsel O'Dell had not filed any brief, had filed what in Oregon is called a bow-for brief of seeing no merits, Mr. Wells actually would have been better off. What was filed was a brief raising the constitutionality of Oregon's Measure 11, a claim that had been rejected by the Ninth Circuit more than a year before with no reference to the standing of the law on that issue. Under Oregon's case law, if a counsel fails to see any meritorious issues, they have to inform the client of that fact, file what's called a Section A brief, and let the client file his own Section B brief so that the client has the opportunity to raise his own issues and preserve them and make sure they are presented. Because O'Dell filed something without giving it to Mr. Wells first, he did not have to inform Mr. Wells that he was not raising all of the issues that had been preserved at the trial level for direct appeal, including the issue that the Oregon Supreme Court has now recognized as a valid issue under Oregon law that would have required reversal of Mr. Wells' conviction. The admission of the, quote, diagnosis of this young woman as having been sexually molested, which was based on nothing more than some medical practitioner deciding that she was telling the truth. That was an issue that Mr. Wells' counsel preserved for trial at trial. That was an issue Mr. Wells clearly wanted raised on direct appeal.  file his own Section B brief so that the client has the opportunity to raise his own issues and preserve them and make sure they are presented at trial level for direct appeal. It is an issue which the Oregon Supreme Court has recently decided in the Souther case is in fact meritorious and requires relief from conviction. So what are you raising now? Today you're raising the fact that that counsel on direct appeal was ineffective. Correct. Okay. Now, has that issue been procedurally defaulted? That's one of the State's arguments, yes, that the issue has been procedurally defaulted. Our argument in response is that the procedural rule enacted and looked at in this case was a brand-new rule. The State insisted on treating it on appeal as the denial of a motion to amend. That is not the procedure that the State post-conviction court undertook. The State post-conviction court undertook striking of a petition that was on file. I will not let this petition move forward. Well, it's on file because the lawyer can turn it into the clerk's office and it gets stamped. But it was on file because he'd been given permission to file an amended or, I guess, second amended petition immediately. Correct. And this is 15 days later. Which the question becomes is that sufficiently immediately or is, and the question for him And that is the question. That's a question, okay, you've got leave. You don't do it in what the trial court later decides is the right time frame. So you don't have permission to file what you filed. I understand why you described that as striking, but I think it's like the other side of the same coin. That's how the trial court describes its conduct if you look at the excerpts of record and the order that appears at excerpts of record 36 to 38. And the issue from a Federal perspective is whether there is sufficient, clear, consistent, regularly applied procedural rules letting Mr. Wells and his counsel know that this trial court has the right to just decide that 15 days isn't sufficiently immediate. Well, since it was the trial court that gave the permission in the first place, if it gives permission that's conditioned, who's the most logical person to decide whether the condition has been satisfied? In terms of a Federal procedural rule, that is the Federal court. I can't imagine anybody else could be more qualified, particularly in circumstances where the trial court makes the point, this isn't going to be delayed. We've got a trial date. That's sticking. And what he gets filed 15 days later is the amended petition and a request to change the trial date, to continue the trial date. Now, there may have been other reasons for the continuance request, but I can't imagine a trial court not responding in the first instance in exactly the same way this trial court did, which is, look, I told you the trial date's not moving, and now you tell me here's my amended petition and I want to move the trial date. With explanation. There is an explanation. And the trial court should look at the explanation. But to tell me that it's not a procedurally regular process, I have difficulty understanding. I can't imagine any trial court that wouldn't have an initial reaction, at least, of saying, look, I told you the date's not moving, and you tell me you want to move the date? You don't have permission to file this. Now, he should go ahead and look at the reason given. But the procedural irregularity is what I'm focusing on here. I can't see anything that's irregular about that procedure. I don't see, and the State has not provided to us, any other cases where this type of procedural matter or issue occurred. Oh, but it doesn't occur very often. You would hope that it doesn't occur very often. What do you mean by this type? You mean where the court says you can file your amended complaint if you do it immediately and it's filed two weeks later, and the court says that's not immediate? You mean that kind of case? Yes. Because from a – and the reason that that's important is where we are at in Federal habeas. The question of whether this claim is defaulted is a Federal question. It's a question for the Federal court to answer based upon finding clear, consistent, regularly applied rules that Mr. Wells and his counsel would have been aware of and that are not arbitrarily imposed or imposed in a manner that looks arbitrary in comparison to all other cases. And we do see numerous cases out of the Oregon courts where second, third, four amended petitions are filed and litigated in post-conviction. This was a request for continuance that was unopposed by the State. This first post-conviction trial date filed on schedule for July 8th, when the transcripts of Mr. Wells' trial were not in his hands until January 15th. He was taking an appropriate period of time to go through the transcripts, identify the claims, and raise them to the post-conviction court, and he had legitimate claims. He had legitimate issues. Had those issues been raised on direct appeal, his conviction would not have stood. And we would not be standing here today. I see I'm at almost two minutes, so I will preserve the rest of my time for rebuttal. Thank you. MS. LAGESAN. May it please the Court, Erin Lagesan on behalf of Superintendent Houghton. I'd just like to discuss briefly Petitioner's procedural default argument. I don't have a lot to add to our brief. The rule here. MR. LAGESAN.  What is the rule that was applied here? MS. LAGESAN. The rule that was applied here is the rule embodied in ORS 138.610, which states that no further pleading shall be filed except as the court may order as explicated by the Oregon Court of Appeals in cases like Ramsey v. Thompson. MR. LAGESAN. So what is that? That's a statute that gives the trial court just like complete discretion as to whether to allow an amendment or not? MS. LAGESAN. The statute says it does give the court quite a bit of discretion. The Oregon courts have read that in conjunction with Oregon Rule of Civil Procedure 23, which is the general. MR. LAGESAN. Are there Oregon state cases that hold that trial court to use that discretion on occasion? MS. LAGESAN.  Ramsey v. Thompson applies the four factors which a court needs to evaluate in answering the question.  LAGESAN. And what's your response to Ms. Maness' argument that, well, that rule is not firmly established and regularly followed in cases like this case where the circumstances are that, apparently, according to her, this is the petitioner's first opportunity to amend. And the court tells him, well, you've got to do it immediately or you can't do it at all. Are there other cases like that? MS. MANESS. There's no cases that follow this precise fact pattern. There is a case cited in my brief at pages 34 and 35, Quimby v. Hill, which deals with the issue of when a court struck a petition that was not filed with leave of the court. And the court of appeals discusses. And it's kind of unusual to tell a lawyer, well, yeah, leave to amend, but you've got to file your amended pleading right now. How can you do that? MS. LAGESAN. Viewed in the context of particular circumstances of this case, the court acted within its discretion in telling him no in that the original order, scheduling order, entered by the court had required all parties to file their amended pleading by March 12th. And when this is the case where it's obvious, you know, the lawyer didn't do what he was supposed to do. And here is, you know, this. MS. MANESS. And I think the court of appeals decision in this case, Wells v. Santa, summarizes the facts in analyzing whether the post-conviction court abused its discretion. The court of appeals notes that based on the information that the trial court, the post-conviction trial court had in front of it, the only event that Petitioner mentions, that court that occurred before the original March 12th deadline was the fact that he hadn't got his transcript until January 15th, 2004. All the events that occurred after that were the ones dealing with his, you know, firing the first lawyer, getting a new lawyer, his lawyer's horseback riding accident. And so the reasoning of the state court was that under these circumstances, he didn't really show what was going on in that two-month gap there that, you know, would show that he had somehow been prevented from complying with the court's original order. MR. NEUMANN. What he apparently was doing was trying to hire a lawyer, which is advice that judges give litigants all the time. I mean, somebody wants to represent himself, we're required to tell him to try to talk him out of it. So is it so unreasonable for someone to try to hire a lawyer? He does hire a lawyer. He turns to that lawyer to submit the claims. The lawyer asks to submit an amended petition. The judge says, well, do it immediately. And the lawyer turns it in two weeks later. From the perspective of the Petitioner himself, what's unreasonable about his behavior? MS. NEUMANN. Well, I think the first issue is whether the Petitioner was able to leave to amend rule and its application under the circumstances, you know, of this case. The second issue is whether, you know, if that rule is good, whether the facts show cause sufficient to establish an excuse for that procedural default. And I think there's an overlap. MR. NEUMANN. Everything we're talking about there is what's been done by the last lawyer. I've lost track of the names. The Petitioner himself, all he could do at that point is hire the lawyer, which he did. And now he's putting his trust in the hands of this lawyer, just like he had been forced to put his trust in the hands of the appointed counsel who had the appeal. I look at this, and what I see is lawyers dropping the ball all over the place, and I don't see anything the Petitioner's done that I can fairly criticize him for, save possibly letting that March deadline go by when he was still representing himself. But then he was trying to hire a lawyer, which is what we want him to do. So that's why I try to focus on the Petitioner himself. This is in a different context. You know, we've got equitable tolling of statutes of limitation. I don't know that there's an equivalent here, but that's sort of what I look for, to see if there's a way to keep the Petitioner from being the victim of the, I think, uncontested dropping of the ball by the first lawyer on direct appeal, and the certainly arguable dropping of the ball by the second lawyer on the habeas petition. Right. And again, we know from Manning v. Foster that ineffectiveness of post-conviction counsel doesn't excuse defaults in the post-conviction process. With respect to Petitioner's situation here, one thing he did in this case, and the documents included at Volume 3, ER 348, he filed what's called a Church v. Gladden motion. In an Oregon post-conviction practice, it's well established that ultimately the Petitioner is the one that bears the burden of presenting his claims to the state post-conviction court. And when a Petitioner's post-conviction lawyer isn't doing their job, they request what's called the Church v. Gladden hearing. I think in his motion, this particular Petitioner demonstrated that he had a full awareness that it was his obligation to get his claims in front of the court. And so I think in light of his clear understanding of that aspect of Oregon post-conviction procedure, it doesn't necessarily, it doesn't, it allowed both the state court and then the district court in this case permissibly to conclude that the responsibility for not filing the petition in compliance with the court's March 12th order and then the immediate order ultimately needs to be borne by the Petitioner rather than by his lawyers. The state didn't oppose any continuance of the trial, did it? We didn't oppose any continuance. Did the state ask the trial judge to strike the amended complaint? No. I think the best evidence of the state's position on what was happening at the time, on June 23rd when the petition was stricken, is Petitioner's lawyer, after the post-conviction court struck the petition, filed an objection to that and submitted an affidavit, which is at volume 2 ER 209. And that states that the state's position is that we don't object to the amendment of the petition, but we would need more time to prepare to defend against the allegations of the petition. So I think properly read, our position was we don't object if we get a continuance so we have enough time to prepare to defend against the allegations. Everybody's problem was the trial judges are now told to control your own calendar. Correct. They don't accept parties coming in saying we agree to continue and the judge now says, uh-uh, it's my calendar, not yours. Correct. The trial judge, I think the record shows the trial judge in this case was very firm on holding to the July 8th trial date and had mentioned that to both parties throughout the course of the proceeding. Okay. Unless there's any further questions, I'll rely on my briefs. Go ahead. Thank you. Your Honor, I'd like to touch on the issues regarding the diligence of Mr. Wells, which was raised by Judge Clifton's questions, and clarify an issue. As I briefly discussed, the Balfour process in Oregon court, unlike California or other courts where State courts take a review of the record themselves on appeal to ensure that the appeal is correct, the Oregon courts refuse to do that. And they say that our method for ensuring that the right, constitutional right to a first direct appeal is met is because we appoint counsel in post-conviction by statute under the State law. So when Mr. Wells went into post-conviction, in addition to O'Dell at direct appeal, he had appointed counsel Mr. Mordini in first post-conviction. Mr. Mordini was still counsel of record in March. So this March deadline that comes for amending the petition, in the record you will find the letters that Mr. Wells had written to Mr. Mordini saying, file an amended petition, here are some of the issues I would like raised. March comes and goes. Mr. Mordini has filed no petition. That is when Mr. Wells files the Church v. Glavine motion saying, I understand I've got to make sure these issues are raised, understand it's my obligation, Mordini has fallen down on the job. Please take him off and give me an appropriate counsel. The Court says, we're taking him off, you're going pro se. Mr. Wells, who knows that he is not a lawyer, then attempts to hire his own lawyer and is able to do so in June when Mr. Klon enters into appearance, seeks leave to amend, is granted leave to amend, has the accident, is in the hospital, files the petition 15 days later. Mr. Wells has done everything that we want a petitioner to do in terms of being diligent. If you look at the rule cited by my opposing counsel, ORS 138.610, you will not find any language informing Mr. Wells or any other potential petitioner that the State is not a valid procedural bar. That's why Mr. Wells is entitled to the relief he has requested. Thank you. We appreciate counsel's argument, and this matter is submitted at this time. Our next case for argument. Is Allstate Insurance Company v. Ralph Readon.
judges: Tashima, Paez, Clifton